

NUMBER 13-11-220-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARVIN EARNEST LUCIEN
A/K/A MELVIN EARNEST LUCIEN,                                        Appellant,

v.

THE STATE OF TEXAS,                                                     Appellee.

On appeal from the 252nd District Court
of Jefferson County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

A Jefferson County grand jury indicted appellant, Marvin Earnest Lucien a/k/a

Melvin Earnest Lucien, for unlawful possession of more than one gram but less than four grams of cocaine, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (a), (c) (West 2010). Without a plea-bargain agreement, appellant pleaded guilty to the offense, and the trial court placed him on five years' deferred-adjudication community supervision. The State subsequently filed a motion to revoke his community supervision, and after a revocation hearing, the trial court revoked his community supervision, adjudicated him guilty of the offense, and sentenced him to eight years' imprisonment. In two issues, appellant argues the trial court abused its discretion by revoking his community supervision. We affirm.[1]

## I. STANDARD OF REVIEW

The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of the community-supervision conditions. *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd) (citing *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Kulhanek v. State*, 587 S.W.2d 424, 426 (Tex. Crim. App. 1979)). We review the trial court's order revoking community supervision under an abuse-of-discretion standard. *Id.* (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). In a community-supervision revocation hearing, an abuse of discretion occurs when the trial judge's decision was so clearly wrong that it falls outside the zone within which reasonable persons might disagree. *Wilkins v. State*, 279 S.W.3d 701, 703–04 (Tex. App.—Amarillo 2007, no pet.); *Brumbalow v. State*, 933 S.W.2d 298,

---

[1] This appeal was transferred to this Court from the Ninth Court of Appeals pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

300 (Tex. App.—Waco 1996, pet. ref'd). We review the evidence in the light most favorable to the trial court's ruling. *Antwine*, 268 S.W.3d at 636 (citing *Cardona,* 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Id.* (citing *Cardona*, 665 S.W.2d 493–94).

## II. MOTION TO REVOKE

The motion to revoke alleged appellant violated the terms and conditions of his community supervision because he: (1) "failed to work faithfully at suitable employment and provide verification of such as directed by the Court"; and (2) "failed to provide verification of performing the community service hours required, as directed by the Court." After hearing evidence and arguments from both sides, the trial court found both violations to be true.

## III. DISCUSSION

We address issue two first, wherein appellant contends the trial court abused its discretion by revoking his community supervision for failing to work faithfully at suitable employment and provide verification of such. Condition six of the terms and conditions of appellant's community supervision provides: "Work faithfully at suitable employment, attend educational programs, and/or perform Community Service Restitution for a total of not less than (40) hours weekly *and provide verification of such*." (emphasis added).

During the revocation hearing, appellant's community-supervision officer, Joan Kirkpatrick, testified the trial court placed appellant on community supervision on January 10, 2010. She stated appellant reported to her on August 11, 2010 and said his job with

3

Landmark Staffing ended on July 26, 2010.  That being the case, she "directed [appellant] to read Condition No. 9[2] and . . . to leave voicemail messages to immediately report any changes."  She stated that "[b]ecause of his unemployment . . . he was directed to report to Mr. Pouncy Monday through Friday at 8:15 for CSR work crews and for job search."  When the prosecutor asked her, "Since he had lost his job, he was to report for job search and community service hours; is that correct?," she said, "Yes, sir, with Mr. Pouncy at probation."  When asked if appellant did that, she said, "[W]e don't have that."  When the prosecutor asked her, "And as a condition of his probation, has he failed to provide verification of performing community service hours, as required?," she said, "I have the community service records hours, and we have eight hours dated June 24th of '10 for the CSR work group."  When asked, "Is it your opinion, . . . he has not performed the community service hours as would be required by the Court?," she said, "All I can say is that all he's completed is eight hours . . . since he's received his probation."

On cross-examination, Kirkpatrick testified that up until July 26 when appellant was laid off from his job, he was gainfully employed and provided verification to her. When he came to see her on August 11, he told her he was unemployed and that he had been unemployed for sixteen days.  At that visit, she told him about "all the things that he was supposed to do, . . . as a result of being unemployed[.]"  She also told him the next time he reported to her, "[h]e was to report with a job search list."  However, appellant was not able to report to her in September because he was arrested on August 25.

---

[2] Condition nine of the terms and conditions of appellant's community supervision stated, in relevant part:  "Immediately report to your Community Supervision Officer any changes of . . . employment, . . . and the source and amount of all income."

When defense counsel asked her, "So, he never really had the opportunity to show you whether or not he was going to comply, or whether or not he complied because he wasn't able to make that September 11th meeting; is that correct?," she said, "He did not have the opportunity to report to me with a job search list. He did have the opportunity to report to our employment specialist Mr. Pouncy the very next day." When asked how she knew appellant did not report to Mr. Pouncy, she said, "I have my community service records, and that would show if he had come back he would have been doing some CSR, because CSR is done certain days during the week. The other days, Mr. Pouncy helped with job search."

Appellant testified that when he was not gainfully employed with Landmark Staffing, he was working for Dixon Contractors. He stated he was working for Dixon Contractors during the sixteen days after Landmark Staffing laid him off. He understood that it was his responsibility to report to Kirkpatrick that he was working for Dixon Contractors. However, he did not inform her that he was working for Dixon Contractors.

During the revocation hearing, defense counsel introduced into evidence a letter from Dixon Contractors. This letter, which was not dated, stated, in relevant part, that appellant "has been in employment with our sole proprietorship company for nearly 2 1/2 years. He was at work when he last reported and was dropped off to the probation office August 25, 2010."

At a revocation hearing, the trial court is the sole judge of the witnesses' credibility and the weight given to their testimony. *Antwine*, 268 S.W.3d at 636 (citing *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). The

5

trial court could have decided to believe Kirkpatrick that appellant was unemployed when he was laid off from Landmark Staffing. Appellant never told Kirkpatrick he was working for Dixon Contractors. Even though the letter from Dixon Contractors stated appellant had worked there "for nearly 2 1/2 years," the letter does not state that appellant was working there after the date he was laid off from Landmark Staffing. In addition, appellant did not provide Kirkpatrick with verification that he was in fact working for Dixon Contractors.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court's decision to revoke appellant's community supervision based upon a violation of condition six was not so clearly wrong that it fell outside the zone within which reasonable persons might disagree. Issue two is overruled.

In his first issue, appellant contends the trial court abused its discretion in revoking his community supervision for failing to perform the required community-service hours. However, proof by a preponderance of the evidence of any one of the alleged violations of the community-supervision conditions is sufficient to support a revocation order. *Antwine*, 268 S.W.3d at 636 (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd)). Therefore, we hold the trial court did not abuse its discretion by revoking appellant's community supervision.

6

## IV. CONCLUSION

We affirm the trial court's order revoking appellant's community supervision.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of November, 2011.